UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | **ORDER DENYING MOTION TO QUASH WRIT OF HABEAS CORPUS AD PROSEQUNDUM** |
|---|---|
| Plaintiff, | |
| v. | Case No. 4:21-cr-00328-YGR |
| DAVID CERVANTES, ET AL., | |
| Defendants. | Re: Dkt. No. 198 |

Pending before the Court is a motion to quash writ of habeas corpus *ad prosequendum* filed by fifteen defendants.[1] Several supplemental filings were received in connection with the pending motion. Having carefully considered the papers submitted, pleadings in this action, and upon further consideration after oral argument which occurred on March 24, 2022, the Court **ORDERS** that the motion is **DENIED** for the reasons explained more fully below.

I. **BACKGROUND**

The Court assumes the parties' familiarity with the underlying action, which, in short, includes allegations of racketeering conspiracy, murder, robbery, as well as trafficking of controlled substances concerning purported members of La Nuestra Familia. (Dkt. No. 1.) On August 27, 2021, upon the motion of the United States of America, Magistrate Judge Virginia K. DeMarchi granted fifteen petitions for writ of habeas corpus *ad prosequendum*. (Dkt. Nos. 4-18.)

---

[1] Specifically, David Cervantes, Antonio Guillen, James Perez, Samuel Luna, Guillermo Solorio, Trinidad Martinez, George Franco, Steven Trujillo, Salvador Castro, Bryan Robledo, Alex Yrigollen, Juan Soto, Edgardo Rodriguez, Robert Maldonado, and Eric Zarate.

1 The writs of habeas corpus *ad prosequendum* directed the state custodians to "produce the bod[ies]" of the defendants "to the U.S. Marshal and/or his authorized deputies" prior to appearing [in federal court] on September 15, 2021 . . . or as soon thereafter as practicable on the charges filed against defendant in the above-entitled Court and further to produce said defendant at all future hearings as necessary until the termination of the proceedings in this Court." (*Id.*) Since the writs were issued, all fifteen defendants have been detained at USP Atwater after the local state detention facilities refused to house them.

## II. DISCUSSION

### A. WHETHER THE WRIT IS NECESSARY

One of the central issues raised in the motion is whether the writ is necessary. The Court has no difficulty determining that the writ is necessary to aid its jurisdiction over the government's prosecution of this multi-defendant action.

No one disputes that when a prisoner is not yet sentenced, as in this case here, the general authority of the federal courts to writ an individual from state custody into federal custody is 28 U.S.C. § 2241. Section 2241 provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [i]t is necessary to bring him into court to testify for trial." 28 U.S.C. § 2241(c)(5). This includes the writ of habeas corpus *ad prosequendum* which is "necessary as a tool for jurisdictional potency as well as administrative efficiency, extended to the entire country" without geographic limitation. *Carbo v. United States*, 364 U.S. 611, 614-15, 618 (1961); *Morgan v. United States*, 380 F.2d 686, 699 (9th Cir. 1967) ("The writ of habeas corpus *ad prosequendum* is proper to bring a prisoner under incarceration by state or federal court to trial for alleged violations of laws.").[2]

---

[2] "When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly." *Thomas v. Brewer*, 923 F.2d 1361, 1367 (9th Cir. 1991) (citation omitted). This type of situation requires "not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure." *Taylor v. Swayer*, 284 F.3d 1143, 1150-51 (9th Cir. 2002) (citing *Ponzi v. Fessenden*, 258 U.S. 254, 259 (1922)). Prototypical litigation of the writ of habeas *ad prosequendum* concerns sentencing; not the defense's attempt to place the defendants in their preferred place of detention.

According to the defendants, the issuance of a writ *ad prosequendum* that permits indefinite pretrial detention outside of the courtroom runs afoul of Section 2241(c)(5) and the role of the writ. Relying on the Supreme Court's description of the writ of habeas corpus *ad prosequendum*, the defendants argue that it "require[es] the immediate presence of the prisoner" or "demanding the prisoner's presence in federal court on a certain day." *United States v. Mauro*, 436 U.S. 340, 357-58 (1978). Defendants proceeded to invoke several cases where the writ was leveraged to bring a state prisoner into federal pretrial detention for specific federal court appearances. However, none of these cases stand for the proposition that the writ is limited to specific appearances. Indeed, it has long been recognized that the "term 'necessary' does not have to be interpreted in a narrow or rigorous manner." *Jones v. Lilly*, 37 F.3d 964, 968 (3d Cir. 1994) (citation omitted). "Rather, a court may avail itself of the Act and issue a writ where helpful 'to achieve the ends of justice entrusted to it.'" *Id*. (citation omitted).[3]

The underlying action here includes over 50 defendants with allegations of racketeering conspiracy. Trial coordination is necessary, especially more so now that: (1) several defendants have indicated that they will be asserting rights to a speedy trial; and (2) others have continued to exercise rights to in person proceedings. It is difficult to understand how superfluous coordination with the state will result in efficient administration of justice given the complexities of the case at hand. "Delay in the trial of accused persons greatly aids the guilty to escape because witnesses disappear, their memory becomes less accurate and time lessens the vigor of officials charged with

---

[3] Nothing in the text of the statute refers to "immediacy" and a close read of the Supreme Court authority relied upon by the defendants does not support their interpretation. For instance, in *Carbo*, while the defendant was released to state custody prior to trial, the release was not made due to the temporal expiration of the writ. Instead, defendant requested, and the court granted, release to secure counsel with the acknowledgment that the defendant would be returned by the state for his prosecution. 364 U.S. at 612. Similarly in *Mauro*, the defendants were returned to the state court not because the writ expired, but due to overcrowding at the federal correctional center that necessitated a return to state court. 436 U.S. at 344-45. *Mauro*'s description that the writ "requires the immediate presence of the prisoner" in no way compels a constrained reading requiring an immediate return to state court. Such a constrained view would frustrate the "due and orderly procedure" that the writ is intended to promote when prosecuting claims involving state and federal jurisdiction. *Ponzi*, 258 U.S. at 259.

3

prosecution." *Id*. at 265. Indeed, defense counsel conceded at the hearing that if the writ were to be quashed, the defendants could be dispersed throughout the state. There is no question that such dispersal would delay proceedings and frustrate federal and state comity. Defendants' motion does not persuade that the writ is improper as to the individual defendants.

### B. WHETHER THE MAGISTRATE JUDGE HAD JURISDICTION TO ISSUE THE WRIT

In an effort to quash the writ, the defense raises a novel argument that the magistrate judge lacked jurisdiction under the statute to issue the writ. Magistrate judges have routinely and historically issued writs *ad prosequendum*. The Federal Magistrates Act provides magistrates broad authority to carry out the responsibilities of the federal court, including the power "to hear and determine any pretrial matter pending before the Court." 18 U.S.C. § 636(b)(1)(a). Indeed, in this District, consistent with the Criminal Local Rules and Federal Rules of Criminal Procedure, magistrates have been delegated broad and wide-ranging powers relating to the transfer and detention of defendants pretrial, including scheduling appearances before the Court.[4] As a practical matter, if a magistrate was unable to issue a writ, the magistrate would not be able to carry out his or her delegated duties in support of aiding this Court with its jurisdiction.[5]

---

[4] *See* N.D. Cal. Local Crim. R. 7-1(b)(13) (permitting magistrates to conduct extradition proceedings); N.D. Cal. Local Crim. R. 7-1(b)(6) (authorizing decisions concerning release or detention); N.D. Cal. Local Crim. R. 7-1(b)(3); N.D. Cal. Local Crim. R. 46-1 (delegating release or detain pursuant to statute); Fed. R. Crim. P. 4, 4-1 (authorizing magistrates to issue arrest warrants and summons).

[5] The defense's invocation of *Williams v. King*, 875 F.3d 500, 503-04 (9th Cir. 2017) for the proposition that consent is required is misplaced. *Williams* involved a Section 1983 civil claim. Section 636(c)(1) required the consent of all plaintiffs and defendants named in a complaint before jurisdiction could vest in a magistrate to hear the civil case. Here, the statutory is Section 636(b)(1)(A), which does not include a consent requirement.

Even if the magistrate judge was without jurisdiction to issue the writ, and she was not, the Court would make an indicative ruling that it would issue the writs *nunc pro tunc* to carry out the necessary prosecution of this case in aid of the Court's jurisdiction. *See, e.g.*, *Lugo v. Hudson*, 785 F.3d 852, 855 (2d Cir. 2015) (affirming defective writ *nunc pro tunc*). At the hearing, the Court also noted that it would refer this issue to the District's standing committee on Criminal Practice for further consideration since the defense bar has never challenged this historical practice.

**C. STANDING**

Next, the government argues that the defendants do not have standing to quash the writ. The argument is accurate in part. Specifically, defendants have no standing to quash the writ to be placed in their preferred place of detention; no such constitutional right exists. However, defendants could have standing to challenge the writ where constitutional rights bearing on their proceedings are implicated. Many of those challenges are speculative at best, if not premature. To have Article III standing, each defendant must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). The Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ("*TransUnion*") is instructive that the defense must have a concrete harm to demonstrate Article III standing. In, *TransUnion*, the Supreme Court emphasized that "a concrete harm must have a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2205 (citation omitted). "[T]hose traditional harms may also include harms specified by the constitution itself." *Id*. at 2204.

To the extent the defendants are seeking to challenge the writ on the grounds they would rather be in state custody, there is no standing. The government has pointed to an extensive volume of cases demonstrating that comity precludes a prisoner from choosing their preferred facility.[6] Those cases are not seriously distinguished. They show that defendants' preference to be in state custody is not a traditional right recognized as a basis for lawsuits in American courts

---

[6] *Ponzi*, 258 U.S. at 260 ("[A prisoner] may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it."); *Poland v. Stewart*, 117 F.3d 1094, 1098 (9th Cir. 1997) ("[A]s pointed out by the Supreme Court in [*Ponzi*] the arrangement made between the two sovereigns, the state and federal governments, does not concern the defendant who has violated the laws of each sovereignty and he cannot in his own right demand priority for the judgment of either."); *United States v. Harden*, 45 F. App'x 237, 239 (4th Cir. 2002); *Bowman v. Wilson*, 672 F.2d 1145, 1154 (3d Cir. 1982); *Chunn v. Clark*, 451 F.2d 1005, 1006 (5th Cir. 1971); *Derengowski v. U.S. Marshal*, *Minneapolis Off., Minn. Div.*, 377 F.2d 223, 223 (8th Cir. 1967); *United States ex rel. Moses v. Kipp*, 232 F.2d 147, 150 (7th Cir. 1956); *see also Moody v. Holman CF*, 887 F.3d 1281, 1285-86 (11th Cir. 2018) ("The reference in [] earlier cases to lack of standing is therefore best seen as a shorthand for holding that the prisoners in question, as a matter of substantive law, did not have a claim that would entitle them to habeas relief.").

1 to support a concrete injury.

2 That said, there are grounds that can be used to challenge the writ. For instance, the Supreme Court in *Ponzi* acknowledged that a prisoner "is entitled to be present at every stage of trial of himself in each jurisdiction with full opportunity for defense [and i]f that is accorded him, he cannot complain." 258 U.S. at 260. Indeed, in *Carbo*, the Supreme Court affirmed the unrestrained jurisdictional reach of the writ *ad prosequendum* throughout the country. However, notably, the government questioned the petitioner's standing to challenge the writ under *Ponzi* and the Supreme Court effectively rejected the standing argument. 364 U.S. at 612 n.1.[7] Without standing, the Supreme Court could not have addressed the jurisdictional issue. Thus, an exception to the rule, contemplated by *Ponzi* and *Carbo*, is where a defendant is not afforded a fair trial or the writ otherwise exceeds the Court's jurisdiction.

The defendants are contending that they are wrongfully being held in federal custody at Atwater pending trial and that their custody at Atwater is depriving them access to the Court and their counsel. This is consistent with the recognition in *Ponzi* that a writ can be challenged where the defendant is not being afforded a full defense. Such rights are necessarily recognized in the Constitution and satisfy the "concrete harm" requirement. *See, e.g.*, *TransUnion*, 141 S. Ct. at 2204. However, the argument fails for additional reasons. An injury in fact must not be "conjectural or hypothetical" and redressability fails where it is "merely speculative." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). As the government argues, Atwater is approximately 121 miles in driving distance from the Court. By contrast, some of the state's custodial institutions are even farther away from the Court than the BOP Atwater facility. The location of counsel for the defendants is sprawling throughout the San

---

[7] While many of the authorities invoked by the government in its papers were issued after the decision in *Carbo*, the Ninth Circuit has indicated that *Carbo* casts doubt on a position that a prisoner has no standing to attack the operation of a writ. *Morgan*, 380 F.2d at 693. The Ninth Circuit has not definitively resolved the scope of standing. In *Poland*, the state argued that a prisoner lacked standing to challenge the Attorney General's decision to leave the prisoner in state custody. 117 F.3d at 1098. While noting that "this contention has some merit," the Ninth Circuit ultimately held that [w]hether or not the issue is analyzed as one of standing, it is clear that [the prisoner's] contention has no merit. . . . If [the Attorney General] chooses to leave [the prisoner] in the custody of the State, . . . neither [the prisoner] nor this court is in a position to say [the Attorney General] lacks the authority under the Constitution to do so." *Id*.

6

Francisco Bay Area. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion*, 141 S. Ct. at 2208. Notably, counsel at the hearing on the motion conceded that the state could refuse to accept the defendants at their preferred facility and distribute them throughout the state. Quashing the writ to redress their concerns is based on mere speculation and the defendants have not carried their burden to challenge them on this theory.

Defendants adopted a kitchen sink approach to challenging the writs. They also raised an additional argument that the writs amount to an unreasonable seizure in violation of the Fourth Amendment. This argument was abandoned at the hearing after the government persuasively demonstrated that the objection was frivolous. Defendants also challenged the writ on the grounds that federal officers may have interviewed certain defendants during their transportation to the BOP Atwater facility. No authority has been preferred that this is a proper basis to quash the writ. As defense counsel acknowledged at the hearing, there are other motions available to address this grievance (*e.g.*, a motion to suppress). The Court finds that those vehicles are more appropriate. A decision on the interview would be advisory in the context of quashing the writ since it has no bearing on whether the defendants are properly before this Court.

**III. CONCLUSION**

For the foregoing reasons, the motion to quash is **DENIED**. This Order terminates Docket No. 198.

**IT IS SO ORDERED.**

Dated: March 31, 2022

_____
YVONNE GONZALEZ ROGERS
United States District Judge

7