UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID CERVANTES, ET AL.,<br><br>Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR IMMEDIATE RELIEF FROM SOLITARY CONFINEMENT**<br><br>Case No. 4:21-cr-00328-YGR<br><br>Re: Dkt. No. 197 |

Pending before this Court is a styled "Motion for Immediate Relief From Solitary Confinement and for Modification of Conditions of Pretrial Detention." The motion concerns the pretrial conditions of fifteen defendants[1] detained at the Bureau of Prisons (BOP) facility at Atwater, California (BOP Atwater). Each of these defendants are charged with racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and are in federal custody pursuant to individual writs of habeas corpus *ad prosequendum*. Based on the filings and counsels' arguments at the March 24, 2022 hearing, the motion is **DENIED IN PART AND GRANTED IN PART**.

By way of background, since the filing of this motion in January, BOP has made numerous changes, the Court ordered supplemental briefings, and the Court visited BOP Atwater. In addition, a new warden was installed in December 2022 who is willing to use his discretion to work collaboratively so that this arrangement can succeed.[2] In their initial motions, defendants

---

[1] Specifically, David Cervantes, Antonio Guillen, James Perez, Samuel Luna, Guillermo Solorio, Trinidad Martinez, George Franco, Steven Trujillo, Salvador Castro, Bryan Robledo, Alex Yrigollen, Juan Soto, Edgardo Rodriguez, Robert Maldonado, and Eric Zarate.

[2] As explained in the government's opposition papers, none of the local facilities with

made three main arguments. First, they argued that their due process rights were being violated by keeping them in "solitary confinement" and "interfere[ing] with basic hygiene and sleep." Second, they asserted that their constitutional rights to effective assistance of counsel and the courts was violated due the practices and policies relating to attorney visits and access to discovery. Finally, that Mr. Cervantes and Mr. Perez were entitled to disability accommodations.

To frame the issues, the Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). "'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent guarantee is the Due Process Clause of the Fourteenth Amendment.'" *Id*. (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977)).

The state may detain a pretrial detainee "to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37. If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective it does not, without more, amount to punishment. *See id*. at 539.

The current state of affairs has changed since the filing of this motion. With respect to the disability accommodations, that issue is resolved and the motion is **DENIED AS MOOT**.

With respect to the due process violations, many of the complaints and few anecdotal concerns which were raised, such as the problem with distributing old toothpaste, nighttime safety checks, and an hour of outdoor activity per day, do not rise to the level of constitutional violations.

---

whom the United States Marshals Service collaborates were willing to agree to house the defendants. The BOP agreed to house the defendants at Atwater, which was the closest of the possible facilities available. Again, to the extent that the defendants are using this motion to be placed in their preferred place of detention, the Court's order denying the motion to quash the writs of habeas corpus *ad prosequendum* explained that they do not have standing as demonstrated by a long standing of tradition in American courts. (Dkt. No. 281.)

2

The new warden of BOP Atwater assures the Court that requests for blankets are and will be fulfilled. The Court has no reason to believe that the centralized heating function for the facility is not operating properly and the Court understands that a temperature log is being maintained should this issue evolve. Further, safety checks must be performed. It is not credible that the use a flashlight through a small door window interrupts sleep, although the slamming of metal doors may. Ultimately though, the motion lacks a sufficient basis and is **DENIED**.

That said, the question of whether housing the defendants in Administrative Segregation is punitive, and therefore allegedly unconstitutional, ultimately depends on the extent to which the warden exercises his discretion and the underlying justifications for ongoing housing decisions. Since arriving at BOP Atwater, the defendants have not been allowed to enter the general population, but rather have been single-celled with no pod time, no real access to television, only one hour of outdoor time (per day and alone), limited commissary access, and limited/restricted visitation (especially on weekends). They will have substantial access to two e-discovery rooms and one legal research room now that electronic discovery is being produced and distributed.

The current justification for the placement relates to the defendants' criminal history: seven of the fifteen are serving life terms; one – 50 years to life; three – over 20 years to life; three – 15 or 19 years to life; and the last is charged with murder. Despite the long prison tenures, which each must now endure, it appears that the State of California housed all of the defendants with the general population and not in administrative segregation. Thus, the length of a prison term is properly only one factor. Further, the defendants are not members of rival gangs; and thus, do not necessarily pose a threat to each other; another consideration. Finally, they are federal pretrial detainees which includes different considerations than those of convicted defendants; albeit here, they have been convicted on other state charges.

During the prison visit, one of the assistant wardens advised the Court that one of the concerns was that BOP did not yet "know" the defendants. The Court understands the comment to be a reflection of the need to observe the defendants and obtain a better real-time assessment of their risk; again, an appropriate consideration.

It is not clear whether all BOP pretrial facilities keep all defendants similarly situated, *i.e.*

pretrial, in administrative segregation. It certainly does not occur in jail predominately used in this District. If BOP pretrial facilities generally do not, then to do so here may rise to the level of punitive if not sufficiently justified. One additional consideration may be the anticipated length of pretrial detention. For some defendants, the time could extend another year or more; for others, they may be heading to trial sooner.[3]

The Court understands that BOP Atwater was not constructed as a pretrial facility, and thus, in some respects, is a work in progress for those purposes. The Court thus expects that the approach used for these defendants will continue to develop. For instance, the Court recognizes that the warden has increased telephone minutes to 100 minutes from fifteen minutes a month effective April 1. This is a positive development as would be increased commissary items, visitation (including periodic weekend visits), pod time, and real access to television.[4] The more restrictive approaches are often a function of being in administrative segregation for a "specific institutional disciplinary sanction," *i.e.* punitive, which does not apply generically to these defendants given their status, as outlined above.

Ultimately, each defendant's case will be resolved by way of motion practice, trial, or change of plea. In this regard, access to counsel and preparation for trial are constitutional rights which must be accommodated. That said, defendants' complaints about the distance to counsel do not persuade. The constitution does not guarantee an ideal situation. The Court agrees that travel time takes two to three hours depending on location, but does not find a constitutional violation based thereon. Moreover, access need only be reasonable. That counsel may be busy and cannot visit BOP Atwater during normal business hours does not create a constitutional violation but may

---

[3] On March 24, 2022, the Court held a status conference with all defendants appearing. Several defendants intend to exercise their speedy trial rights, several defendants intended to exercise their speedy trial rights yet recanted upon further consideration, several defendants are still weighing whether they will exercise speed trial rights, and several defendants expressed no intention to exercise speedy trial rights at this time. This issue is more fully reflected in the transcript of the March 24, 2022 proceedings.

[4] The Court also understands that BOP Atwater has accommodated the defendants' requests to modify the commissary items available, recently opened the facility to visitors in light of changes to COVID-19 protocols, and is evaluating how to make the television accessible given the design of the facility.

4

be addressed in other ways. With respect to constitutional issues regarding access, the Court is concerned with structural issues or those rising to the level of a pattern or practice. If defense counsel is concerned that those issues exist, then counsel should work first with the U.S. Marshal and maintain a log so that the systematic issues can be addressed.

Given that the situation is not as dire as defendants contend in their moving papers, the motion is **DENIED, IN PART, WITHOUT PREJUDICE**. The motion is **GRANTED** only with respect to the issues referenced below:

1. The Court understands that defendants will have access to the two e-discovery rooms and legal research room from approximately 6:00 a.m. to 9:30 p.m. and that time is only otherwise limited based upon lack of availability due to use or other security checks. The Court has seen the written daily logs showing the defendants' usage. Out of an abundance of caution, in the event of any dispute, and as requested during the last status conference, the Court **HEREBY ORDERS** that BOP Atwater use three *separate* logs; one for each room. In the event the Court needs to inspect the log, it will be much easier to determine usage for each room.

That said, the Court understands that the warden may be attempting to outfit a third e-discovery room. Should this access be insufficient to address the scope of the discovery and the demand, the Court will revisit the issue.

2. Lawyers must have the ability to meaningfully review and discuss discovery with their clients. Other detention facilities do not appear to have the same computer restrictions as BOP Atwater. The Court requires more justification and/or collaboration to address this topic. The Court has encountered security concerns with use of electronics in other facilities which, with testing, and real information have been alleviated. Therefore, the Court appoints Steven Kalar to work directly with the U.S. Marshal, and the warden or his designee, to attempt to bridge the gap with respect to this issue. Mr. Kalar can also lead the effort with respect to the use any i-Pads at the facility. The parties shall file a report on the status of the issue by May 11, 2022.

3. As discussed during the site visit, the legal research space is not meaningfully functional. The Court understands that the warden is in the process of making changes to this space. John Paul Reichmuth is appointed to review the space with the government and provide an

update to the Court with respect to its status by May 11, 2022.

4. Finally, while not raised in the context of the pending motion, argument was raised at the hearing concerning access to legal mail. There appears to have been certain instances where legal mail has been searched or seized. While initially the issue may have been the lack of proper identifying information on the envelope, one credible anecdote suggests that BOP staff opened and reviewed legal mail which, in fact, was properly labeled. This **does** raise concerns. Given the issue was not formally raised and the factual record is undeveloped, the Court makes no ruling on this issue other than to warn personnel that such conduct could have significant consequences.

This Order terminates Docket No. 197.

**IT IS SO ORDERED.**

Dated: April 11, 2022

_____
YVONNE GONZALEZ ROGERS
United States District Judge

cc: Acting United States Marshal, Mark Kolc
United States Attorney, Stephanie Hinds